Lavonee A. ALLEN, Plaintiff,

v.

**THE COLLEGE OF WILLIAM & MARY, Rita Metcalfe, and the Commonwealth of Virginia, Defendants.**

No. CIV.A.4:02–CV–31.

United States District Court,
E.D. Virginia,
Newport News Division.

Jan. 27, 2003.

Oscar Houser Blayton, Hampton, VA, for plaintiff.

Ondray Toney Harris, Office of Atty. Gen., Richmond, VA, for defendants.

## OPINION & ORDER

DOUMAR, District Judge.

Before the Court is the Report and Recommendation (hereinafter "Report") of Magistrate Judge Bradford F. Stillman in relation to Defendants' Motion to Dismiss. For the reasons set forth herein, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

### I. Factual Background

In this case, Plaintiff claims that she was subject to discrimination during her employment with the College of William and Mary (hereinafter "William and Mary"), an agency of the Commonwealth of Virginia (hereinafter "Commonwealth"). Plaintiff states that she is a black female citizen of the United States and that she was employed at William and Mary as a Senior Fiscal Technician. Pl's Compl. at ¶ II(1); Defs' Answer at ¶ 12.

Plaintiff states that she was hired by William and Mary on September 18, 1978, and that she has worked in the Human Resources Office since 1986. Pl's Compl. at ¶ IV(A)(1). From June 1994 until October 23, 2000, Plaintiff worked as a Senior Fiscal Technician in the Human Resources Office under the direct supervision of Defendant Rita Metcalfe. *Id.* Defendant Metcalfe is a white female. *Id.* During her employment as a Senior Fiscal Technician at William and Mary, Plaintiff claims that she was subject to disparate treatment amounting to racial discrimination, discrimination on the basis of disability,[1] and retaliatory discrimination.

### A. Disparate Treatment Amounting to Racial Discrimination

In support of her claim of disparate treatment amounting to racial discrimination, Plaintiff proffers examples of how she was treated differently than other similar-

---

**1.** Plaintiff alleges that her disability is depression.

ly situated white employees. First, Plaintiff claims that between June 1994 and October 2000, she was required to work unpaid overtime on weekends and that she began complaining to Defendant Metcalfe in January 1998. Pl's Compl. at ¶ IV(A)(2). Plaintiff further claims that Defendant Metcalfe was compensated for overtime and that a similarly situated white male received a cash payment of $950.00 for additional duties. *Id.* Second, Plaintiff alleges that since 1998 she has been "harassed and disciplined unfairly for errors that were common in the normal course of business in her office," and that other similarly situated employees were not disciplined for making the same types of errors. Pl's Compl. at ¶ IV(A)(3). Third, Plaintiff complains that she had to take phone calls in addition to performing other job duties, but a similarly situated white male did not have the same requirement. *Id.* Fourth, Plaintiff asserts that while she was required to have Defendant Metcalfe's permission to close her office door, a similarly situated white male did not have the same requirement. *Id.* Fifth, Plaintiff insists that Defendant Metcalfe denied her "flex time" while allowing it for a similarly situated white female. *Id.* However, Defendants maintain that Plaintiff worked a "flex schedule" of 6 a.m. to 5 p.m. Monday through Thursday and that she did so of her own choosing. Defs.' Answer at ¶ 27. Finally, Plaintiff claims that she was denied a request to be transferred to another supervisor in July 1999, yet a similarly situated white male's transfer request was granted. Pl's Compl. at ¶ IV(A)(3).

## B. Discrimination on the Basis of Disability

Asserting a claim of discrimination because of disability, Plaintiff alleges that she was unjustly disciplined on various occasions. In October 1998, Defendant Metcalfe gave Plaintiff a notice of unsatisfactory job performance and failure to follow her supervisor's instructions. Pl's Compl. at ¶ IV(B)(2); Defs.' Answer at ¶ 27. Plaintiff maintains that this action was taken upon her return from leave to care for her sick mother. Pl's Compl. at ¶ IV(B)(2). In November 1998, Plaintiff claims she told Defendant Metcalfe that she was being treated for depression.[2] Pl's Compl. at ¶ IV(B)(3). On January 8, 1999, Plaintiff was issued a written notice of unsatisfactory job performance and was suspended without pay for two days. Pl's Compl. at ¶ IV(B)(4); Defs.' Answer at ¶ 29. Plaintiff claims that this disciplinary action was taken on the day that she returned from leave taken to care for her critically ill mother. Pl's Compl. at ¶ IV(B)(4). Upon Plaintiff's appeal, the suspension was rescinded but the notice of unsatisfactory job performance was upheld. Pl's Compl. at ¶ IV(B)(4); Defs.' Answer at ¶ 29.

From February 3, 1999, through April 26, 1999, Plaintiff maintains that she was on leave pursuant to the Family and Medical Leave Act. Pl's Compl. at ¶ IV(B)(4). On April 27, 1999, Defendant Metcalfe gave Plaintiff a notice of unsatisfactory job performance and suspended Plaintiff for two weeks. Pl's Compl. at ¶ IV(B)(5); Defs.' Answer at ¶ 30. Upon receipt of this notice, Plaintiff resigned from her position. *Id.* A few hours later, Plaintiff claims that she requested to rescind her resignation but that her request was denied. Pl's Compl. at ¶ IV(B)(5). Plaintiff filed a grievance, and while the notice of unsatisfactory job performance and the

---

**2.** Plaintiff alleges that her depression resulted from job stress and from having to care for members of her family who were ill. Pl's Compl. at ¶ IV(B)(3).

two week suspension were upheld, Plaintiff was allowed to rescind her resignation. Pl's Compl. at ¶ IV(B)(6).

Plaintiff received another notice of unsatisfactory job performance from Defendant Metcalfe in July 2000. Pl's Compl. at ¶ IV(B)(7). Shortly thereafter, Plaintiff suffered a nervous breakdown which rendered her unable to work. *Id.* Plaintiff maintains that this was communicated to William and Mary by her physicians. *Id.* On October 17, 2000, Defendant Metcalfe sent Plaintiff a letter stating that Plaintiff was required to return to work on October 23, 2000. Pl's Compl. at ¶ IV(B)(8); Defs.' Answer at ¶ 33. On the morning of October 23, 2000, Plaintiff telephoned Defendant Metcalfe and explained that she would not be able to return to work because her mother was seriously ill. Pl's Compl. at ¶ IV(B)(8). Defendant Metcalfe then sent Plaintiff an overnight letter informing Plaintiff that she had been terminated as of October 23, 2000. Pl's Compl. at ¶ IV(B)(8); Defs.' Answer at ¶ 33. Plaintiff alleges that she was not given an opportunity to request accommodation for her disability of depression and that she was terminated without advance notice, in violation of William and Mary's written policy. Pl's Compl. at ¶ IV(B)(9).

## C. Retaliatory Discrimination

Plaintiff maintains that in grieving her two week suspension and William and Mary's refusal to allow her to rescind her resignation, she was opposing an unlawful employment practice. Pl's Compl. at ¶ IV(C)(1). After the grievance hearing, which was held in July 1999, Plaintiff asserts that Defendant Metcalfe retaliated by denying Plaintiff "flex time" and by requiring Plaintiff to obtain permission before closing her office door. Pl's Compl. at ¶ IV(C)(2)-(4). Plaintiff also claims that soon after the grievance hearing she was given a list of rules to follow and the list of rules was not given to other similarly situated employees. Pl's Compl. at ¶ IV(C)(5).

Plaintiff states that she was terminated on October 23, 2000, by Defendant Metcalfe without notice, in violation of William and Mary's written policy. Pl's Compl. at ¶ IV(C)(6). Plaintiff asserts that Defendant Metcalfe's actions were intentional and done with malice so as to "injure Plaintiff in her reputation and in her profession." Pl's Compl. at ¶ IV(C)(8).

## II. Procedural History

On February 28, 2001, Plaintiff filed a charge of disability discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). Pl's Compl. at ¶ III. Plaintiff sent a letter to the EEOC amending her complaint to include discrimination based upon disparate treatment and retaliation on March 27, 2001. *Id.* The EEOC issued Plaintiff a Notice of Right to Sue with regard to her charge of discrimination on December 21, 2001. *Id.*

On March 21, 2002, Plaintiff filed a complaint alleging discrimination in employment on the grounds of race, disability, and retaliation. Defendants responded on August 9, 2002, by filing an Answer and a Motion to Dismiss with a memorandum in support thereof. Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants moved to dismiss Plaintiff's claims under Title I of the Americans with Disabilities Act (hereinafter "ADA"), the Fourteenth Amendment, and 42 U.S.C. § 1983. On August 22, 2002, Plaintiff filed a Reply Brief in Response to Defendants' Brief in Support of the Motion to Dismiss, and on August 23, 2002, Defendants' filed a Rebuttal Brief. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the Court referred the matter to Magistrate Judge Stillman

for a report of proposed findings and recommendations.

On November 15, 2002, Magistrate Judge Stillman issued his Report recommending that Defendants' Motion to Dismiss be granted in part and denied in part. More specifically, the Report made the following four recommendations:

(1) The Court recommends that plaintiff's claims for money damages under the ADA be dismissed as to defendants William and Mary and the Commonwealth. The Court does not recommend that plaintiff's claim for money damages against defendant Metcalfe, in her individual capacity, be dismissed. The Court recommends that plaintiff's claim under the ADA for the injunctive remedy of reinstatement against defendants William and Mary and the Commonwealth be dismissed; the Court recommends that plaintiff's claim under the ADA for the injunctive remedy of reinstatement against defendant Metcalfe not be dismissed; the Court recommends that Allen's claim under the ADA for back pay be dismissed; (2)[t]he Court recommends that plaintiff's complaint be construed to articulate no direct claim under the Fourteenth Amendment. To the extent that plaintiff's complaint states a cause of action directly upon the authority of the Fourteenth Amendment, said claim be dismissed; (3)[t]he Court recommends that Plaintiff's § 1983 claim not be dismissed; (4)[t]he Court recommends that, to the extent that plaintiff's complaint states a cause of action under the authority of any provision of Title VI, said claim be dismissed.

Magistrate's Report at 42–43. The Report also notified the parties of their right to file specific written objections to the Report and their right to respond to another party's specific objections. Magistrate's Report at 43–44. The Report further notified the parties that the failure to file timely objections would constitute a waiver of the right to appeal from a judgment of the Court based on the findings and recommendations. Magistrate's Report at 43. On November 26, 2002, Defendants filed Objections to the Magistrate Judge's Report and Recommendation. Plaintiff did not file any objections nor did Plaintiff respond to the objections filed by Defendants. Thus, this matter is now ripe for review by the Court.

## III. Standard of Review

### A. Motion to Dismiss

█ Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss an action for lack of subject matter jurisdiction. In deciding a motion made pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must ascertain whether "plaintiff's allegations standing alone and taken as true plead jurisdiction and a meritorious cause of action." *Allianz Insurance Co. of Canada v. Cho Yang Shipping Co., Ltd.,* 131 F.Supp.2d 787, 789 (E.D.Va. 2000) (quoting *Dickey v. Greene,* 729 F.2d 957, 958 (4th Cir.1984)). The burden of establishing the existence of subject matter jurisdiction rests upon the party which seeks to invoke the court's authority. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992); *Allianz,* 131 F.Supp.2d at 789; *North Carolina Ass'n of County Comm'r v. Thompson,* 2002 WL 1284387 at *2 (M.D.N.C. May 9, 2002).

█ For motions made pursuant to Federal Rule of Civil Procedure 12(b)(1), the evidentiary standard depends upon whether "the challenge is a facial attack on the sufficiency of the pleadings, or an attack on the factual allegations that support

jurisdiction." *Crutchfield v. United States Army Corps. of Engineers,* 230 F.Supp.2d 687, 695 (E.D.Va.2002). If the defendant is attacking the sufficiency of the complaint, the court must accept all of the complaint's factual allegations as true. *Id.; Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,* 174 F.Supp.2d 388, 391 (D.Md.2001); *Santiago v. Giant Food, Inc.,* 2001 WL 118628 at * 2 (D.Md. Feb.5, 2001); *Energy Recovery, Inc. v. Hauge,* 133 F.Supp.2d 814, 816–17 (E.D.Va.2000). On the other hand, if the defendant claims that the jurisdictional facts alleged in the complaint are untrue, the pleadings are regarded as mere evidence. *Id.* The court then weighs the pleadings and all of the other evidence to determine whether subject matter jurisdiction exists. *Id.*

Federal Rule of Civil Procedure 12(b)(6) permits a party to move the court to dismiss an action if the plaintiff fails to state a claim upon which relief can be granted. The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. *Neitzke v. Williams,* 409 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338(1989). When considering a motion made pursuant to Rule 12(b)(6), the court is generally limited to a review of the pleadings filed in the case. Exhibits attached to the pleadings are considered a part of the complaint. Fed. R.Civ.P. 10(c).

█ The Court of Appeals for the Fourth Circuit has held that a motion to dismiss under Rule 12(b)(6) should only be granted in "very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). However, dismissal is appropriate if it appears that the plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir.1988) (citation omitted);

*Davis v. Hudgins,* 896 F.Supp. 561, 566 (E.D.Va.1995)(citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991). When reviewing the legal sufficiency of a complaint, the Court must construe the factual allegations "in the light most favorable to plaintiff." *Schatz,* 943 F.2d at 489 (quotation omitted); *Davis,* 896 F.Supp. at 566 (citing *Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.,* 991 F.2d 94, 97 (4th Cir. 1992)).

## B. Magistrate's Report

█ Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. Pro. 72(b), a party objecting to a magistrate's report and recommendation may serve and file specific written objections to the proposed findings and recommendations. Upon the filing of specific written objections to a Magistrate Judge's Report and Recommendation, the Court is required to review *de novo* those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1) (2001) (stating that "a judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made"). The district judge retains the ultimate responsibility for the disposition of the case. Consequently, the district judge may accept, reject, or modify the findings or recommendations made by the magistrate. 28 U.S.C. § 636(b)(1) (2001); Fed. R. Civ. Pro. 72(b).

## IV. Analysis

### A. The Complaint

As Magistrate Judge Stillman noted, "[t]he complaint before the Court is not clearly drafted and has caused significant confusion." Magistrate's Report at 7. In light of the confusion, the Magistrate en-

deavored "to separate the wheat of Allen's claims and their jurisdictional foundations from the chaff of her complaint's legion citations." Magistrate's Report at 9. Plaintiff's complaint indicates that Plaintiff claims racial discrimination in employment, discrimination in employment on the basis of disability, and retaliatory discrimination in employment. However, as the Magistrate correctly noted, the difficulty with Plaintiff's complaint is that each cause of action contains a string cite of authority. From the face of the complaint, the significance of the cited authority is ambiguous and unclear.

Defendants' Motion to Dismiss interprets Plaintiff's complaint. as bringing certain claims based on specific authorities. Magistrate's Report at 10. However, the Magistrate was not convinced that Plaintiff intended to plead these claims based upon all of the authorities listed. *Id.* As the Magistrate so aptly stated, "the resolution of the Motion before the Court requires the Court to ascertain what claims are stated by Allen's complaint and the statutory or constitutionally authority upon which those claims are founded." *Id.*

After a lengthy discussion, the Magistrate found that Plaintiff's complaint alleged a claim for racial discrimination in employment under Title VII, a claim of disability discrimination in employment under the ADA, and a claim of retaliatory discrimination under Title VII, the ADA, and 42 U.S.C. § 1983. After a review of the entire record, the Court concurs with the Magistrate's discussion of the complaint. Since neither party objected to the Magistrate's construal of Plaintiff's complaint, the Court could summarily adopt the Magistrate's recommendations. However, for the sake of clarity, the Court will explain its rationale for concurring with the Magistrate's recommendations with re-

gard to the interpretation of Plaintiff's complaint.

■■■ In advancing claims of race discrimination in employment and retaliatory discrimination in employment, Plaintiff's complaint cites the Fourteenth Amendment. Based upon Plaintiff's admission that "there is no direct claim under the Fourteenth Amendment, the Magistrate recommended that Plaintiff's complaint be construed to not advance a direct claim under the Fourteenth Amendment." Pl's Reply Brief in Opp'n to Defs.' Mot. to Dismiss at 9–10; Magistrate's Report at 43. Except for the Fourth Amendment, it is well-established that the United States Constitution and its amendments do not create private rights of action, but rather they enable the government to enact laws to enforce the articles or the amendments. *Stevenson ex rel. Stevenson v. Martin County Bd. of Educ.*, 93 F.Supp.2d 644, 647 (E.D.N.C.1999). *See also, Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir.1995) (stating "Hughes cannot bring a claim directly under the Fourteenth Amendment because it does not create a cause of action."). The proper mechanism for addressing a deprivation of this alleged constitutional right is a cause of action against a state actor brought under 42 U.S.C. § 1983. *Id.* Accordingly, the Court finds that Plaintiff's complaint does not state a cause of action under the Fourteenth Amendment.

■■■ The complaint also indicates that Plaintiff's cause of action for race discrimination in employment and retaliatory discrimination in employment are premised upon Title VI of the Civil Rights Act of 1964. As discussed by the Magistrate, the complaint cites Title VI while tracking the statutory language from Title VII. Magistrate's Report at 13–17. The Magistrate was inclined "to interpret the complaint's invocation of Title VI as a typographical

error or an unnecessary and unavailing assertion of jurisdiction." Magistrate's Report at 15. However, the Magistrate acknowledged that Plaintiff's Reply Brief discussed why her Title VI claim should not be dismissed. *Id.* Regardless of Plaintiff's intention, the Magistrate found that Title VI was not applicable in this case. Thus, the Magistrate recommended that to the extent that Plaintiff intended to pursue a claim under Title VI, it should be dismissed. *Id.*

In relevant part, Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (2001). Congress never intended that this statute be applicable to race discrimination in the employment context. *Romeo Community Schools v. United States Dep't of Health, Educ., & Welfare,* 438 F.Supp. 1021, 1029 (E.D.Mich. 1977), *aff'd,* 600 F.2d 581 (6th Cir.1979), *cert. denied,* 444 U.S. 972, 100 S.Ct. 467, 62 L.Ed.2d 388 (1979). Indeed, 42 U.S.C. § 2000d is qualified by 42 U.S.C. § 2000d–3, which provides that "[n]othing in this title shall be construed to authorize action under this title by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment."

Reading 42 U.S.C. §§ 2000d and 2000d–3 together, Title VI does not provide a judicial remedy for employment discrimination by institutions receiving federal funds unless the primary objective of the federal aid is to provide employment or unless discrimination in employment necessarily causes discrimination against primary beneficiaries of federal aid. *Trages-er v. Libbie Rehabilitation Ctr., Inc.,* 590 F.2d 87, 89 (4th Cir.1978), *cert. denied,* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). Neither of these narrowly drawn exceptions applies to this case. Plaintiff does not sufficiently allege a cause of action under Title VI. Accordingly, the Court finds that Plaintiff's complaint does not state a cause of action under Title VI. To the extent that Plaintiff intended to pursue a claim under Title VI, such a claim should be dismissed.

In accordance with this discussion and for the reasons outlined in the Magistrate's Report, the Court finds that Plaintiff's complaint advances the following three claims: (1) a claim of racial discrimination in employment brought under the provisions of Title VII and § 1983; (2) a claim of disability discrimination in employment brought under the ADA; and (3) a claim of retaliatory discrimination in employment brought under the provisions of Title VII, the ADA, and § 1983. With these claims in mind, the Court can now address Defendants' Motion to Dismiss.

**B. Claims of Racial Discrimination in Employment and Retaliatory Discrimination in Employment Brought Under Title VII**

These claims have not been challenged by Defendants in their Motion to Dismiss. *See* Defs.' Brief in Supp. of the Mot. to Dismiss at 3, n. 1 (stating "Ms. Allen's Title VII claims are not the subject of Defendants' Motion to Dismiss."). Thus, these claims remain and Plaintiff is entitled to pursue them.

**C. Claims of Discrimination in Employment as to Disability and Retaliatory Discrimination in Employment Brought Under the ADA**

After an extensive discussion of the Eleventh Amendment and its applica-

bility to ADA claims, the Magistrate determined that the present case is governed by *Board of Trs. of the Univ. of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). In *Garrett,* the Supreme Court held that the ADA's abrogation of State sovereign immunity was ineffective and, therefore, suits for money damages under Title I of the ADA were barred by the Eleventh Amendment. 531 U.S. at 374, 121 S.Ct. 955. Following *Garrett,* the Magistrate concluded that Plaintiff's claims for money damages as to Defendants William and Mary and the Commonwealth were barred by the Eleventh Amendment. Magistrate's Report at 31–32. Consequently, the Magistrate recommended that Plaintiff's claims under the ADA be dismissed as to Defendants William and Mary and the Commonwealth. Magistrate's Report at 42. Neither party has objected to the Magistrate's analysis on this issue. After reviewing the Magistrate's discussion, the Court concurs with the Magistrate's analysis as to Defendants William and Mary and the Commonwealth. Accordingly, Plaintiff's claims for money damages under the ADA should be dismissed as to Defendants William and Mary and the Commonwealth.

■ The Magistrate then proceeded to discuss Plaintiff's claims for money damages against Defendant Metcalfe. Defendants had urged the Magistrate to find that Plaintiff's claim under the ADA for money damages was brought against Defendant Metcalfe in her official capacity and that, therefore, it was a suit against the Commonwealth barred by the Eleventh Amendment. Defs. Brief in Supp. of Mot. to Dismiss at 4–5. Noting the *Alden* exception to the sovereign immunity doctrine, which permits a party to sue a state officer in that officer's individual capacity, the Magistrate stated that a determination of whether Plaintiff was suing Defendant Metcalfe in her individual or official capacity was required. Magistrate's Report at 31–32 (relying on *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)). The Magistrate found that Plaintiff's assertion of Defendant Metcalfe's ultra vires conduct indicated that Plaintiff sought relief from Defendant Metcalfe in her individual capacity. Magistrate's Report at 32. Thus, the Magistrate recommended that Plaintiff's "ADA claim against Defendant Metcalfe for money damages should not be dismissed to the extent that she does not seek an award of monetary damages to be paid from the treasury of the Commonwealth." Magistrate's Report at 32.

Defendants object to the Magistrate's recommendation that Plaintiff's ADA claim for money damages against Defendant Metcalfe should not be dismissed. Defs.' Objs. at 1–3. Defendants rely on *Lizzi v. Alexander,* 255 F.3d 128 (4th Cir.2001), to argue that the real interests of the Eleventh Amendment are only served if individual supervisors, in addition to the state, are prohibited from being sued. Defs.' Objs. at 2. Defendants further argue that the mere allegation of ultra vires conduct is not sufficient to state a claim against Metcalfe in her individual capacity. *Id.* Defendants assert that Metcalfe was acting within the scope of her official duty when she supervised and disciplined Plaintiff and that Plaintiff has not specified any conduct by Metcalfe that would "strip her of her official capacity." Defs.' Objs. 2–3.

Despite the Magistrate's discussion and Defendants' arguments, the question of whether Plaintiff is suing Defendant Metcalfe in her individual or official capacity is irrelevant in light of the precedent in this district and this circuit. It has established that individuals are not liable for violations of the ADA. *Baird ex rel. Baird v. Rose,*

192 F.3d 462, 472 (4th Cir.1999) (holding that "the ADA does not permit an action against individual defendants for retaliation conduct protected by the ADA."); *Shiflett v. GE Fanuc Automation Corp.*, 1996 WL 481082 at *5 (W.D.Va. July 23, 1996) (holding that only employers, not individuals can be liable under the ADA and dismissing plaintiff's claims under the ADA against individual defendants); *Cortes v. McDonald's Corp.*, 955 F.Supp. 531, 536–38 (E.D.N.C.1996) (finding that an individual in a supervisory position may not be held personally liable as an "employer" under the ADA and dismissing Plaintiff's ADA claim against an individual defendant); *Stephens v. Kay Mgmt. Co., Inc.*, 907 F.Supp. 169, 174 (E.D.Va.1995) (noting that the ADA defines "employer to mean an employing entity, not an individual" and holding that "individuals who do not independently meet the ADA's definition of 'employer' cannot be held liable under the ADA in the making of employment decisions of a plainly delegable character").

In this case, there has been no allegation that Defendant Metcalfe is an "employer" as defined by the ADA. Quite to the contrary, Plaintiff's complaint indicates that Defendant Metcalfe is a supervisory employee of William and Mary. There has also been no allegation that Defendant Metcalfe's actions in disciplining and ultimately terminating Plaintiff were employment decisions of a non-delegable nature. Quite surprisingly, these issues were not briefed or addressed by any of the parties. For these reasons, the Court finds that even if Plaintiff intended to sue Defendant Metcalfe in her individual capacity, Defendant Metcalfe cannot, in her individual capacity, be held liable for violations of the ADA. Consequently, Defendant Metcalfe is immune from suit for violations of the ADA regardless of whether she is sued in her official or individual capacity. Accord-

ingly, Plaintiff's claims under the ADA for money damages against Defendant Metcalfe should be dismissed.

■ With regard to Plaintiff's ADA claim for injunctive relief, the Magistrate states that "the Eleventh Amendment does not bar suits for injunctive relief against *state officers.*" Magistrate's Report at 33 (emphasis in original). The Magistrate notes that while Plaintiff seeks equitable relief against all of the defendants, only Defendant Metcalfe is a state officer. *Id.* On this basis, the Magistrate concludes that Plaintiff may seek equitable relief from Defendant Metcalfe but not from Defendants William and Mary or the Commonwealth. *Id.* Therefore, the Magistrate recommends that Plaintiff's claims for injunctive relief under the ADA be dismissed as to Defendants William and Mary and the Commonwealth. Neither party has objected to this recommendation. After reviewing the Magistrate's discussion, the Court concurs with the Magistrate's analysis as to Defendants William and Mary and the Commonwealth. Accordingly, Plaintiff's ADA claims for injunctive relief in the form of either reinstatement or back pay against Defendants William and Mary and the Commonwealth should be dismissed.

The Court now turns to the issue of whether Plaintiff can seek equitable relief from Defendant Metcalfe. Under *Ex Parte Young*, a plaintiff can sue a state officer for prospective injunctive relief to end a continuing violation of federal law. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Shepard v. Irving*, 204 F.Supp.2d 902, 919 (E.D.Va.2002) (citing *Quern v. Jordan*, 440 U.S. 332, 347–48, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)). In their brief in support of their Motion to Dismiss, Defendants argued that although Defendant Metcalfe is a state officer, the dis-

crimination that Plaintiff alleges occurred in the past and, as such, is not sufficient to establish an ongoing violation of federal law. Defs. Brief in Supp. of Mot. to Dismiss at 11. Distinguishing the cases cited by Defendants, the Magistrate found that should Plaintiff establish that her termination was a violation of a federal right, her injury in the form of continued unlawful dispossession from unemployment would represent an ongoing violation. Magistrate's Report at 34. Thus, the Magistrate determined that Plaintiff was entitled to seek prospective injunctive relief. The Magistrate then addressed the question of what remedies would be encompassed by injunctive relief. In doing so, the Magistrate noted that an award of back pay would resemble "a monetary reward against the state in violation of the Eleventh Amendment" more closely than it would a "permissible form of ancillary relief" under *Ex Parte Young*. Magistrate's Report at 36. On this basis, the Magistrate recommended the dismissal of Plaintiff's claims for back pay under the ADA. *Id.* The Magistrate further recommended that Plaintiff's claim for reinstatement under the ADA not be dismissed as to Defendant Metcalfe. *Id.*

█ Plaintiff has not objected to the Magistrate's recommendation that her claims for back pay under the ADA against Defendant Metcalfe be dismissed. Even if Plaintiff could establish an ADA violation, an award of back pay would be tantamount to a monetary award against the Commonwealth. Such an award would violate the Eleventh Amendment, and thus, it is not permissible. Accordingly, Plaintiff's ADA claim for injunctive relief in the form of back pay against Defendant Metcalfe should be dismissed.

█ On the other hand, from what the Court can ascertain, Defendants seem to object to the Magistrate's recommendation that Plaintiff's claims for injunctive relief against Defendant Metcalfe not be dismissed.[3] However, Defendants do not further explain their objection. In fact, the discussion in Defendants' Objections focuses on why Defendant Metcalfe should not be liable in her individual capacity for violations of the ADA. Defendants do not specify how or why the Magistrate erred in concluding that Plaintiff was entitled to sue Defendant Metcalfe in her official capacity for injunctive relief. The lack of a specific objection obviates the need of this Court to conduct a de novo review. While the statute seems to require a de novo determination whenever there is an objection to a magistrate's report, the courts have held that de novo review is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir.1982)(citing *United States v. Merz,* 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964) and *Pendleton v. Rumsfeld,* 628 F.2d 102 (D.C.Cir.1980)).

However, for the sake of clarity and out of an abundance of caution, the Court has reviewed this issue de novo. It is undisputed that William and Mary is an agent of the Commonwealth. As such, its employees are officers of the Commonwealth. Therefore, Defendant Metcalfe, as an employee of William and Mary, is a state officer. Under *Ex Parte Young* and its progeny, a plaintiff is permitted to sue a

---

**3.** As Defendants state, "The Magistrate Judge's report recommends the [sic] Defendant Metcalfe can be held liable, in her individual capacity and that Metcalfe not be dismissed as to injunctive relief. Defendants object to such conclusion...." Defs. Objs. at 1–2.

state officer for prospective injunctive relief to end an ongoing violation of federal law. The Court agrees with the Magistrate's determination that if Plaintiff can establish a violation of her federal rights, such a violation would be ongoing because Plaintiff was terminated from her employment with William and Mary. Thus, the Court finds that Plaintiff is entitled to pursue her ADA claim against Defendant Metcalfe in her official capacity as a state officer for prospective injunctive relief in the form of reinstatement provided that Defendant Metcalfe has the authority to issue this form of injunctive relief.

### D. Claims of Racial Discrimination and Retaliatory Discrimination in Employment Brought under 42 U.S.C. § 1983

■ The question presented by Defendants' Motion to Dismiss is whether Plaintiff's claim under 42 U.S.C. § 1983 is preempted by the availability of a remedy under Title VII. After a review of some of the relevant cases, the Magistrate stated that "by simultaneously pursuing relief under both Title VII and § 1983, a plaintiff (like Allen) does not bypass the requirements and procedures built into Title VII by Congress." Magistrate's Report at 40. On this basis, the Magistrate concluded that Plaintiff's claim under 42 U.S.C. § 1983 is not preempted by Title VII. *Id.* Therefore, the Magistrate recommended that Plaintiff be entitled to simultaneously pursue her Title VII and § 1983 claims. Magistrate's Report at 40–41. However, the Magistrate noted that he would have reached the opposite conclusion had he "decided to construe Allen's § 1983 claim to allege the deprivation of her right to be free from retaliatory discrimination as it is guaranteed by Title VII and the ADA." *Id.* at n. 10. Thus, the Magistrate's recommendation is predicated upon Plaintiff's pursuit of claims under 42 U.S.C. § 1983 that

are separate and distinct from her claims under Title VII.

Defendants have objected to the Magistrate's recommendation that Plaintiff be permitted to pursue her Title VII and § 1983 claims simultaneously. In essence, Defendants object to the Magistrate's analysis of *Hughes*, 48 F.3d at 1376. Defs. Objs. at 3. "Defendants contend that the reasoning that Plaintiff cannot bring a § 1983 claim before or after a Title VII action, but can during a Title VII action is flawed." *Id.* Defendants argue that *Hughes* controls on this issue and that the Magistrate failed to properly defer to *Hughes*. *Id.* Finally, Defendants reiterate that Title VII provides a comprehensive statutory scheme to address employment discrimination and that, therefore, Plaintiff should not be allowed to escape that comprehensive statutory scheme by pursuing claims under 42 U.S.C. § 1983. Defs. Objs. at 4.

Given Defendants' objection, the Court has conducted a de novo review. After carefully reviewing the Magistrate's analysis, Defendants' objections, and the applicable case law, the Court finds that Plaintiff's § 1983 claim is not preempted by Title VII.

In *Keller v. Prince George's Co.*, 827 F.2d 952 (4th Cir.1987), the United States Court of Appeals for the Fourth Circuit addressed the question of whether a § 1983 claim was preempted by Title VII. The Court held that a plaintiff was not foreclosed from pursuing alternate relief under both 42 U.S.C. § 1983 and Title VII. In so holding, the Court reasoned that Congress recognized the possibility that litigants might utilize § 1983 to bypass the Title VII scheme, contemplated foreclosing this possibility, and ultimately decided against doing so when it enacted the 1972 Amendments to Title VII. *Id.* at 956–61.

Later, in *Hughes,* the United States Court of Appeals for the Fourth Circuit held, without reference to *Keller,* that a plaintiff who failed to pursue relief under Title VII could not selectively maintain the same claim under 42 U.S.C. § 1983. 48 F.3d at 1378 n. 6.

Like the Magistrate, the Court finds that *Keller* and *Hughes* are distinguishable. In fact, subsequent district court decisions within the Fourth Circuit have recognized the distinction. *See Shelton v. Richmond Public Schools,* 186 F.Supp.2d 646, 650–51 (E.D.Va.2002) (noting that district courts within the Fourth Circuit have distinguished *Keller* from *Hughes* "on the factual basis that the plaintiff in *Keller* ...had pursued relief under both statutory schemes without waiving or defaulting as to either avenue...."); *Morrow v. Farrell,* 187 F.Supp.2d 548, 552–553 (D.Md.2002) (finding the general rule to be that Title VII does not preempt § 1983 claims but acknowledging that *Hughes* creates an exception to the general rule); *Brown v. Housing Authority of Calvert County,* 150 F.Supp.2d 856, 862 (D.Md.2001) (stating that "[o]ne obvious distinction between *Keller* and *Hughes* is that in the latter, the plaintiff could have but failed to institute an action under Title VII, while in the former, the plaintiff brought causes of action under both statutes."). Since Plaintiff has simultaneously commenced a § 1983 action and a Title VII action, the facts in this case are identical to *Keller* and distinguishable from *Hughes.* Following *Keller,* Plaintiff is not foreclosed from simultaneously pursuing her claims under 42 U.S.C. § 1983 and Title VII.

▮ Even though Plaintiff is not foreclosed from pursuing claims under both 42 U.S.C. § 1983 and Title VII, Plaintiff's § 1983 claim faces the bar of the Eleventh Amendment. The Eleventh Amendment prohibits suits against a state that are brought by its own citizens, citizens of another states, or subjects of a foreign state. U.S. Const. amend. XI; *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). There are six recognized exceptions to the sovereign immunity granted to states by the Eleventh Amendment, and they are as follows: (1) states can consent to be sued; (2) states can be sued by the Federal Government or by other states; (3) Congress can abrogate the sovereign immunity pursuant to its enforcement power under § 5 of the Fourteenth Amendment; (4) private suits can be brought against entities lesser than states, such as municipalities; (5) suits for injunctive or declaratory relief can be brought against state officers; and (6) suits for money damages can be brought against state officers in their individual capacities as long as the award will be paid by the individual, not the state treasury. *Alden,* 527 U.S. at 755–57, 119 S.Ct. 2240. *See also, South Carolina State Ports Auth. v. Federal Mar. Com'n,* 243 F.3d 165, 176–77 (4th Cir.2001) (discussing the exceptions to the sovereign immunity doctrine).

▮ Without a doubt, neither the first nor the second exception is applicable in this case. Moreover, neither 42 U.S.C. § 1981 nor 42 U.S.C. § 1983 contain provisions abrogating state sovereign immunity. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (noting that while § 1983 "provides a federal forum to remedy many deprivations of civil liberties," it does not "provide a federal forum for litigants who seek a remedy against states for alleged deprivations of civil liberties"); *Freeman v. Michigan Dept. of State,* 808 F.2d 1174 (6th Cir.1987) (finding that Eleventh Amendment bars § 1981 action against a state because Congress did not intend to establish state liability when it enacted § 1981); *Demuren v. Old Dominion Univ.,* 33

F.Supp.2d 469, 474–475 (E.D.Va.1999) (noting that both § 1981 and § 1983 lack the "requisite clear congressional intent to abrogate" sovereign immunity). Thus, with regard to Plaintiff's § 1983 claim, Defendants William and Mary and the Commonwealth are immune from suit pursuant to the Eleventh Amendment. Accordingly, Plaintiff's § 1983 claim should be dismissed as against Defendants William and Mary and the Commonwealth.

■ While state officers are immune from suit for damages in their official capacity, state officers can be sued in their official capacity for injunctive or declaratory relief. *Carboni v. Meldrum,* 949 F.Supp. 427, 433 (W.D.Va.1996), *aff'd,* 103 F.3d 116, 1996 WL 698069 (1996) (noting that employees of state veterinary college could not be sued for damages for acts undertaken in their official capacity); *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714. Consequently, Plaintiff cannot seek money damages under § 1983 against Defendant Metcalfe in her official capacity. Pursuant to *Ex Parte Young* and its progeny, a plaintiff is entitled to sue a state officer for prospective injunctive relief to end an ongoing violation of federal law. As with Plaintiff's claim under the ADA, back pay is not a permissible form of injunctive relief. Thus, Plaintiff is entitled pursue a § 1983 claim against Defendant Metcalfe in her official capacity for injunctive relief in the form of reinstatement provided that Defendant Metcalfe has the authority to provide for such relief.

State officers can be sued in their individual capacities for money damages provided that the award will be paid by the individual and not the state treasury. *Alden,* 527 U.S. at 755–57, 119 S.Ct. 2240. Thus, Plaintiff is entitled to pursue a § 1983 claim against Defendant Metcalfe in her individual capacity. Whether Defendant Metcalfe is protected by qualified immunity is a question reserved for the future.

## V. Conclusion

After reviewing the entire record, the Court adopts the Magistrate's construal of Plaintiff's complaint. In summary, the Court finds that Plaintiff's complaint does not state a cause of action under the Fourteenth Amendment. To the extent that Plaintiff intended to pursue a claim under the Fourteenth Amendment, such a claim is hereby **DISMISSED**. The Court finds that Plaintiff's complaint does not state a cause of action under Title VI. To the extent that Plaintiff intended to pursue a claim under Title VI, such a claim is hereby **DISMISSED**. Plaintiff's ADA claims for money damages against all Defendants are hereby **DISMISSED**. Plaintiff's ADA claims against Defendants William and Mary and the Commonwealth for injunctive relief in the form of reinstatement or back pay are hereby **DISMISSED**. To the extent that Defendant Metcalfe has the authority to issue injunctive relief in the form of reinstatement, Plaintiff is entitled to pursue her ADA claim for reinstatement against Defendant Metcalfe. However, Plaintiff's ADA claim against Defendant Metcalfe for injunctive relief in the form of back pay and any reason other than possible reinstatement, as set forth above, is hereby **DISMISSED**. Plaintiff's § 1983 claim is not preempted by Title VII to the extent that it is premised upon § 1981. However, Defendants William and Mary and the Commonwealth are immune from suit pursuant to the Eleventh Amendment. Accordingly, Plaintiff's § 1983 claim is **DISMISSED** as against Defendants William and Mary and the Commonwealth. To the extent that Defendant Metcalfe has the authority to issue injunctive relief in the form of reinstatement, Plaintiff is enti-

tled to seek reinstatement against Defendant Metcalfe in her official capacity pursuant to a § 1983 claim based upon § 1981. Plaintiff is not entitled to seek injunctive relief in the form of back pay from Defendant Metcalfe in her official capacity. Plaintiff is entitled to pursue a § 1983 claim based upon § 1981 against Defendant Metcalfe in her individual capacity. Whether Defendant Metcalfe is protected by qualified immunity is not now before the Court. Accordingly, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

The Clerk is DIRECTED to mail a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**