**KETTLER INTERNATIONAL, INC., Plaintiff,**

v.

**STARBUCKS CORPORATION, Defendant.**

**Civil Action No. 2:14cv189.**

United States District Court, E.D. Virginia, Norfolk Division.

Signed Oct. 21, 2014.

John C. Lynch, David Michael Gettings, Troutman Sanders LLP, Virginia Beach, VA, for Plaintiff.

Christopher E. Hassell, Craig Lawrence Sarner, Washington, DC, Danielle Christine Loss, Malcolm Donald Schick, Thomas Kelly Cox, G & P/Schick, PC, San Diego, CA, for Defendant.

## OPINION & ORDER

HENRY COKE MORGAN, JR., Senior District Judge.

This matter was before the Court upon Defendant Starbucks Corporation's ("Defendant" or "Starbucks") Motions to Dismiss and/or Transfer Venue. Docs. 5, 7. A hearing was held on October 16, 2014. The Court **DENIED** the Motions, and now issues this Opinion and Order explaining its reasoning.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### a. Factual Background [1]

This declaratory judgment action arises out of allegedly defective patio furniture sold by Plaintiff Kettler Int'l, Inc. ("Plaintiff" or "Kettler") to Defendant Beginning in approximately 2009, Plaintiff began selling "Carlo" chairs to Starbucks, its agent, and/or its contractors.[2] Compl. ¶ 1. These chairs were shipped for use in Starbucks stores in California and Arizona. *Id.* Ex. A. Delivery continued until 2013. *Id.* ¶ 15. Starbucks never refused a delivery of Carlo chairs. *Id.* ¶ 16.

In 2010, Kettler's Vice President of Finance, Stephen Mannix, signed an acknowledgement agreeing to terms contained in Starbucks' Supplier Handbook (the "Agreement").[3] Doc. 5–1. The handbook contained provisions concerning the

---

1. "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir.2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motion to Dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

2. Sales were made directly by Plaintiff, as well as its third-party distributors.

3. "Agreement" is defined as the "Starbucks purchase order, blanket purchase agreement, and/or master purchase agreement and accompanying documentation that incorporate these Standard Terms and Conditions." Doc. 16–1 at 6.

warranties that Seller (in this case, Kettler) guaranteed to Starbucks. These include that the goods "are free from defects in design, workmanship, and materials[.]" Doc. 16–1 at 33. Additionally, the "[w]arranties contained in the Agreement are in addition to all other warranties, express, implied, or statutory and in addition to all obligations contained in the Agreement." *Id.* at 34.

The Agreement also contains a choice of law and forum selection clause, which states in its entirety:

> Terms and conditions of the Agreement shall be governed by and construed in accordance with the laws of the state of Washington, without reference to conflicts of law principles. None of the provisions of the United Nations Convention on Contracts for the International Sale of Goods shall be applied to the interpretation or enforcement of the Agreement. Any legal proceeding relating to the Agreement shall be brought only in a court of competent jurisdiction in the state of Washington.

Doc. 16–1 at 36. There was also a standard merger clause, stating that "[t]he Agreement and any other provisions incorporated into the Agreement by reference, constitute the entire agreement of the parties with respect to Starbucks purchase of Goods from Seller and supersede all prior agreements between the parties, whether oral or written." *Id.*

Litigation has developed concerning alleged defects in the chairs. In December 2012, Starbucks was sued in California state court by Hae Jee for an injury that resulted from the alleged malfunctioning of one of the chairs. Doc. 16–1 at 21. In September 2013, Starbucks filed a third-party complaint against Kettler and Stanislaus Funding, Inc. for indemnity, as well as for failure to obtain insurance, as was required by the Agreement between the parties. *Id.* at 23–26. Starbucks did not assert Washington law in its third-party complaint. Moreover, this case is centered only on one chair.

Thereafter, on April 8, 2014, Starbucks sent Kettler a letter titled "Notice of Breach of Warranty (Commercial Code Section 2607)." Compl. ¶ 18. In the letter, Starbucks informed Kettler that it had experienced failures in some of the Carlo chairs, and that third-party laboratory testing confirmed these failures. *Id.* ¶ 20. As a result, Starbucks stated it had begun removing the Carlo chairs from its stores, that it was collecting and recycling the chairs, and that it would retain a "discrete sampling" of the chairs for inspection. *Id.* ¶ 21. Starbucks claimed that in this process, it incurred over one million dollars in expenses. *Id.* ¶ 23. The letter also informed Kettler that Starbucks' counsel was "instructed to initiate legal proceedings against Kettler to compel Kettler to make good on the warranties and misrepresentation" pertaining to the sale of the chairs. *Id.* ¶ 24. Furthermore, Starbucks informed Kettler that it would "pursue its remedies arising from the purchase of all Carlo chairs, plus consequential and incidental damages related to the removal, storage and recycling of said Carlo chairs." *Id.* Ex. A. The letter contained no reference to the Agreement, nor any reference to Washington law. *Id.*

On April 10, 2014, Kettler replied to this letter. Compl. ¶ 27. Kettler asked Starbucks to provide test results, incident reports, an exact count of the defective chairs, further explanation of the alleged breach of contract and warranties, and all other relevant information. *Id.* ¶ 28. Starbucks did not respond to this letter. *Id.* ¶ 29. On April 21, 2014, Kettler again mailed a letter to Starbucks, asking it to provide proof that the allegedly defective chairs were purchased within the last year,

and thus covered by the one year warranty. *Id.* Ex. C.

Counsel for the parties exchanged phone calls on April 22, and Kettler sent another letter following this conversation. *Id.* Ex. D. According to the letter, counsel for Starbucks informed Kettler he did not know when the chairs Starbucks had preserved were manufactured or how many of the 7500 Carlo chairs Starbucks had already recycled.[4] *Id.* The letter also referenced a discovery dispute in the California state case. *Id.*

Starbucks sent another letter to Kettler on May 2, 2014. Doc. 16–1 at 14. This letter references the Agreement for the first time. *Id.* at 17. However, this letter made no reference to any threat of future litigation, and focused on Kettler's demands that Starbucks preserve any evidence of allegedly defective chairs. *Id.* at 14–18.

### b. Procedural Background

On May 2, 2014, Kettler filed its three-count Complaint seeking a declaratory judgment that (1) it has not breached any warranty; (2) it has not breached any contractual term; (3) and that Starbucks is not entitled to rescission. Doc. 1. On May 28, 2014, Defendant filed a Motion to Dismiss and/or Transfer Venue. Doc. 5. On May 29, 2014, Defendant filed a Motion to Change Venue. Doc. 7. Plaintiff responded to both motions on June 12, 2014. Docs. 15, 16. Defendant filed its replies on June 16, 2014. Docs. 17, 18.

On September 25, 2014, the Court entered its Rule 16(b) Scheduling Order. Doc. 24. Trial is set to commence on April 21, 2015. *Id.*

---

4. Counsel represented at the hearing that none of the chairs have been recycled.

5. Indeed, the Federal Rules of Civil Procedure permit a court to raise the lack of sub-

## II. LEGAL STANDARDS

### A. Motion to Dismiss

#### a. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal when the Court lacks subject matter jurisdiction.[5] The plaintiff, having invoked the jurisdiction of the court, bears the burden of proving that subject matter jurisdiction is proper. *A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 548 F.Supp.2d 219, 221 (E.D.Va.2008). The evidentiary standard for motions made pursuant to Rule 12(b)(1) depends on whether the challenge is a facial attack on the sufficiency of the pleadings, or an attack on the truthfulness of the factual allegations supporting jurisdiction. *Allen v. Coll. of William & Mary*, 245 F.Supp.2d 777, 782–83 (E.D.Va.2003). Where a defendant attacks "the sufficiency of the complaint, the court must accept all of the complaints factual allegations as true." *Id.* at 783. Where a defendant claims that the facts alleged in the complaint that establish jurisdiction are untrue, however, "the pleadings are regarded as mere evidence," and the court may weigh the pleadings and all other evidence to determine whether subject matter jurisdiction exists. *Id.* In this instance, Defendant is not arguing that the facts are untrue, and thus the Court presumes all the alleged facts are true.

#### b. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; "it does not

---

ject matter jurisdiction *sua sponte,* and requires that a court finding a lack of subject matter jurisdiction dismiss the action. Fed. R.Civ.P. 12(h)(3).

resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In deciding the motion, a court may consider the facts alleged on the face of the complaint, as well as " 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *Moore v. Flagstar Bank,* 6 F.Supp.2d 496, 500 (E.D.Va.1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). The court may look to documents attached to the Complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *See Pueschel v. United States,* 369 F.3d 345, 353 n. 3 (4th Cir.2004) (citations omitted).

#### c. Motion to Transfer Venue

■ 28 U.S.C. § 1404(a) provides for transfer of venue. Ordinarily, "a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Pragmatus AV, LLC v. Fa-*

*cebook, Inc.,* 769 F.Supp.2d 991, 994 (E.D.Va.2011) (quoting *Agilent Tech., Inc. v. Micromuse, Inc.,* 316 F.Supp.2d 322, 324–25 (E.D.Va.2004)).

■ However, when there is a valid forum selection clause, the calculus changes. *Atlantic Marine Const. Co. v. U.S. District Court for the Western District of Texas,* — U.S. —, 134 S.Ct. 568, 581, 187 L.Ed.2d 487 (2013). "[A] valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (Kennedy, J., concurring) (second alteration in the original)). In such an instance, the district court's analysis changes in three ways: (1) "the plaintiff's choice of forum merits no weight;" (2) the Court is not to "consider arguments about the parties' private interests;" and (3) a "transfer of venue will not carry with it the original venue's choice-of-law rules[.]" *Id.* at 581–82. Venue is a matter of procedural law, and thus federal law applies in determining the enforceability of a forum selection clause. *Id.* at 580; *see also Albemarle Corp. v. AstraZeneca UK Ltd.,* 628 F.3d 643, 650 (4th Cir.2010).

### III. ANALYSIS

#### A. Motion to Dismiss

Defendant moved the Court to dismiss the Complaint, arguing that Plaintiff has failed to set forth a "case or controversy" sufficient to establish jurisdiction under the Declaratory Judgment Act.

First, as a threshold matter, Defendant brought forth its Motion to Dismiss under Rules 12(b)(1) and 12(b)(6). However, in its Memorandum in support, Defendant only devotes one paragraph to its Rule 12(b)(6) analysis. Doc. 5 at 9. Defendant argued that "[t]he lack of a case or actual

controversy, as discussed above, means that this matter should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim." *Id.*

This Court has considered whether a case or controversy exists under the Declaratory Judgment Act by applying both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *Compare Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F.Supp.3d 506, 509, 513, 2014 WL 2567158, at *2, *6 (E.D.Va. June 6, 2014) (applying Rule 12(b)(6) standard in ruling on a motion to dismiss a declaratory judgment action), *with Norfolk Dredging Co. v. Phelps*, 433 F.Supp.2d 718, 720–21 (E.D.Va.2006) (considering motion to dismiss a declaratory judgment action under Rules 12(b)(1) and 12(b)(6)), *and Standard Fire Ins. Co. v. Armstrong*, No. 3:12cv181, 2012 WL 3730644, at *2 (E.D.Va. Aug. 28, 2012) (applying Rule 12(b)(1) standard in ruling on motion to dismiss a declaratory judgment action). Regardless of whether the motion was brought forth under Rule 12(b)(1) or 12(b)(6), the Court has applied the same standard under the Declaratory Judgment Act. *Compare Phelps*, 433 F.Supp.2d at 721, *with Shore Bank v. Harvard*, 934 F.Supp.2d 827, 837 (E.D.Va. 2013). Thus, for purposes of this Motion, the standard the Court considered is the same under both Rule 12(b)(1) and 12(b)(6).[6]

■ The Declaratory Judgment Act gives the federal courts power "[i]n a case of actual controversy within its jurisdiction" to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Supreme Court precedent re-

quires that such actions be " 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t]' of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)).

■ The Fourth Circuit has identified three elements to assist this analysis. First, the complaint must allege an " 'actual controversy' " between the parties " 'of sufficient reality to warrant issuance of a declaratory judgment.' " *Volvo Const. Equip. North America, Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (quoting 28 U.S.C. § 2201); *see also MedImmune, Inc.*, 549 U.S. at 127, 127 S.Ct. 764 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). Second, there must be an independent basis for jurisdiction over the parties. *Volvo*, 386 F.3d at 592. Finally, the court cannot abuse its discretion in exercising jurisdiction. *Id.*

In this case, the Court has an independent basis for jurisdiction under 28 U.S.C. § 1332, because Plaintiff is a Virginia corporation, Defendant is a Washington corporation, and the amount in controversy exceeds $75,000. Compl. ¶¶ 5–6, 9. Thus, the Court must only consider the dispute as it relates to the first and third prongs of the *Volvo* test.

---

**6.** This conclusion is bolstered by the fact that in this motion, Defendant does not contest the factual allegations of the complaint. Thus, the Court must accept as true the factual allegations whether conducting a Rule 12(b)(1) analysis or a Rule 12(b)(6) analysis. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Allen*, 245 F.Supp.2d at 783.

### 1. Case or Controversy under the Declaratory Judgment Act

■ In its Motion to Dismiss, Defendant focused on ripeness, arguing that Plaintiff's claims are not ripe because they require factual development and because the rescission claim is based on a future speculative event. Doc. 5 at 9. For support, it cited *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003). *Id.*

Plaintiff argued, however, that Defendant confused the standards for review of agency actions with that of declaratory judgments. Doc. 15 at 12. Applying the proper standard, Plaintiff argued that Defendant sufficiently threatened litigation to create an actual controversy between the parties. *Id.* at 9. Additionally, Plaintiff contended that the fact that factual discovery is necessary to properly rule on its declaratory judgment does not defeat jurisdiction. *Id.* at 14–15. Finally, Plaintiff also argued that it is not speculative as to whether Starbucks will attempt to rescind—it already has. *Id.* at 16.

First, Plaintiff is correct that *Nat'l Park Hospitality* only applies to actions involving review of agency decisions. *Nat'l Park Hospitality*, 538 U.S. at 808, 123 S.Ct. 2026. Thus, the proper standard to apply is the *MedImmune* standard.

■ Threatened litigation can be sufficient to establish the actual controversy requirement. *Volvo*, 386 F.3d at 593 n. 12; *Armstrong*, 2012 WL 3730644, at *3. The first letter Starbucks sent to Kettler invoked California Commercial Code Section 2607, which requires the buyer to "within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy[.]" Cal. Com.Code. § 2607(3)(A). This notice is a prerequisite to filing a breach of warranty action under California law. *Mance v. Mercedes–Benz*

*USA*, 901 F.Supp.2d 1147, 1153 n. 4 (N.D.Cal.2012). The letter also informed Kettler that Starbucks had incurred over a million dollars in expenses. Compl. Ex. A. Furthermore, the letter explicitly stated that counsel was "instructed to initiate legal proceedings against Kettler to compel Kettler to make good on the warranties and misrepresentations noted above." *Id.* The notice also stated that "Starbucks elects to rescind the sale[.]" *Id.* Furthermore, Starbucks threatened to recycle all unclaimed Carlo chairs beginning in May 2014. *Id.* Moreover, Starbucks already filed a claim in California state court against Kettler pertaining to one Carlo chair. Kettler has also taken the position that Starbucks does not have a valid warranty claim. Compl. Ex. D.

Defendant did not cite a single case whereby a declaratory defendant was able to make such clear threats of litigation, and then successfully argue that no case or controversy exists. This is likely because numerous cases show that such threats are sufficient to create such a controversy. *See, e.g., Volvo*, 386 F.3d at 593–94 ("When Volvo initiated its declaratory judgment action ... it had terminated the Dealer Agreements, it had received the Dealers' litigation threats, and separate suits had been filed against it[.]"); *Shore Bank*, 934 F.Supp.2d at 838 ("Harvard has expressly threatened, in his pending state court declaratory judgment action, to file a breach of contract claim[.]"); *Armstrong*, 2012 WL 3730644, at *3 ("by denying coverage, Plaintiff has disputed Defendant's contractual rights while placing itself in a position legally adverse to that of Defendant.") Thus, a case or controversy exists such that the Court can hear this action.

### 2. Discretion to Hear the Case

■ Just because the Court can hear this case does not mean that it must, for

jurisdiction over declaratory judgments actions is discretionary. *Phelps*, 433 F.Supp.2d at 721. However, the Court should exercise its discretion liberally, and articulate a good reason to decline to extend review in the event the Court chooses to exercise such discretion. *Id.* The Court is to consider the following factors in making this exercise of discretion:

> (1) whether the judgment "will serve a useful purpose in clarifying the legal relations in issue; (2) whether the judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding;" (3) considerations of federalism, efficiency, and comity; (4) "whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable."

*Id.* (quoting *Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.*, 139 F.3d 419, 422–23 (4th Cir.1998)).

 Defendant argued that the Court should exercise its discretion to deny hearing this case. Starbucks focused on factors (1) and (4), arguing that because Plaintiff is not suing on a single contract, this action will not clarify the rights and remedies of the parties. Moreover, Starbucks presented Plaintiff's action as an act of forum-shopping, in an attempt to reach a verdict here in Virginia before the California courts resolve the *Jee* matter.

Contrary to Defendant's arguments, a declaratory judgment in favor of Kettler would clarify its legal rights in regards to the contract dispute between the two parties. Furthermore, because Starbucks is threatening to sue, the declaratory judgment will terminate the uncertainty that Kettler faces while Starbucks does not pursue any litigation despite its repeated threats. There is no evidence before the Court that Plaintiff is engaging in any inappropriate gamesmanship regarding this action; the parties are of diverse citizenship and thus a federal forum would be available for this dispute.

Moreover, the fact that there is a pending action does not compel the Court to decline jurisdiction in this case. In this situation, the Fourth Circuit has identified four factors for the Court to consider in exercising its discretion:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297 (4th Cir.2005) (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998)).

In this case, the declaratory judgment before the Court addresses all of the chairs and all of the claims; rescission is not a part of the California state court action, and thus the state court cannot resolve the issues more efficiently. Furthermore, because rescission is not an issue in the California case, there will not be an overlapping issue of law that would create unnecessary entanglement. Additionally, there is a potential dispute as to what state's law should apply, and thus California's interest in ensuring California law would be applied is reduced in this

case.[7] *New Wellington*, 416 F.3d at 297. Moreover, including Kettler's desired claims against Starbucks for declaratory judgment in what originated as a personal injury action would unnecessarily complicate the California case, further reducing California's interest in this case. *See Kapiloff*, 155 F.3d at 494 (considering the efficiency of allowing the state court to hear the claims). Thus, as a whole, the Court concluded that the case or controversy requirement is met, and that there is no reason for the Court to use its discretion to deny hearing the case. Therefore, the Court **DENIED** the Motion to Dismiss.

## B. Motion to Transfer Venue

Defendant also moved the Court to transfer venue to the United States District Court for the Western District of Washington. Doc. 5 at 10. The only basis that Defendant asserted for the transfer of venue was the forum selection clause. *Id.* Defendant cited the recent Supreme Court case *Atlantic Marine* for the proposition that this Court is bound to transfer the case because "[n]o extraordinary factors exists which advocate going against the bargained-for selected forum." *Id.* at 11.

Plaintiff brought forth numerous arguments as to why the forum-selection clause is not binding in this case. Plaintiff first argued that this litigation is not related to the Agreement, and thus does not fall within the forum selection clause, because it does not bring forth its action pursuant to the Agreement and because Starbucks has never asserted the Agreement as a basis for its Notice under the California Commercial Code. Doc. 16 at 11. Plaintiff also argued that Starbucks' conduct constituted a waiver of the forum selection

clause because it has asserted California law and filed a third-party complaint against it in California state court. *Id.* at 12–14. Additionally, Plaintiff argued that because Starbucks asserts warranty claims going back to 2008, and the Acknowledgement binding Plaintiff to the forum selection clause was not signed until 2010, the current dispute is not within the forum selection clause. *Id.* at 16. Finally, Plaintiff argued that only 14% of the disputed chairs would fall within the Agreement, and thus the forum selection clause does not apply because "[i]t is Starbucks' burden to demonstrate, with proof, that the entirety of the present action falls within the forum selection clause." *Id.* at 18.

At the hearing, Defendant countered that the Court should not consider its filing of the third-party complaint in California as a waiver of the forum-selection clause. Defendant first argued that it did not choose the California forum, as it was the personal injury plaintiff who chose the forum. Second, Defendant argued that it also sued third-party intermediaries, who are not subject to suit in Washington. Finally, it also argued that bringing the action in California conserved judicial resources, by having one forum attempt to address all the issues present in that case.

### 1. Waiver

 A party can waive the enforcement of a forum selection clause, but such waiver cannot be found lightly. *Whiting–Turner Contracting Co. v. Westchester Fire Ins. Co.*, Civil No. JFM–13–348, 2013 WL 3177881, at *4 (D.Md. June 20, 2013) (citing *Wachovia Bank Nat'l Ass'n v. EnCap Golf Holdings, LLC*, 690 F.Supp.2d 311, 327 (S.D.N.Y.2010)). "A forum-selection clause . . . will not be deemed waived

---

7. The Court takes no position at this time concerning what state's law applies in this case.

unless (1) the party invoking the clause has taken action inconsistent with it or has delayed its enforcement, and (2) the other party would be prejudiced by its enforcement." *Whiting–Turner,* 2013 WL 3177881, at *4 (citing *Wachovia,* 690 F.Supp.2d at 327); *see also MicroStrategy, Inc. v. Lauricia,* 268 F.3d 244, 249 (4th Cir.2001) (applying this same test in the context of waiving an arbitration provision). "[W]hen a party disregards a forum selection clause and sues on a contract in an unauthorized forum, it waives the forum selection clause only for the specific claim it pursues." *Wachovia,* 690 F.Supp.2d at 328 (internal quotation marks and citation omitted).

In *Whiting–Turner,* the defendant attempted to argue that a plaintiff waived enforcement of a forum-selection clause providing for venue to be in Maryland because the plaintiff first filed a writ of summons in Pennsylvania state court. *Whiting–Turner,* 2013 WL 3177881, at *5. The court denied defendant's motion to dismiss for improper venue on this basis because the defendant suffered no prejudice; the plaintiff never filed a complaint and any legal expenses incurred in the forum were the results of the defendant's own conduct. *Id.*

Similarly, in *CSX Transp., Inc. v. Blakeslee,* No. 3:12cv713, 2013 WL 1193183, at *6 (M.D.Fla. March 22, 2013), the court looked at the similarity between the first action filed in a forum outside the forum selection clause. There, the plaintiffs had previously filed an action in Connecticut for the recovery of unpaid freight charges, and subsequently filed an action in Florida for breach of contract concerning a credit agreement; the forum selection clause stated all actions under the contract were to be filed in a federal or state court located in Duval County, Florida. *Id.* at *1. The court found that plaintiffs had not waived their right to litigate in Florida by filing an action in Connecticut because the action in Connecticut did not concern the breach of the credit agreement. *Id.* at *6.

Additionally, in *Lauricia,* in the context of waiver of a contractual right to arbitrate, the Fourth Circuit looked at the similarity between the factual and legal claims between the earlier-filed action and the later-filed action where the defendant sought to enforce the arbitration provision. *Lauricia,* 268 F.3d at 250 (citing *Doctor's Assocs. Inc. v. Distajo,* 107 F.3d 126, 133 (2d Cir.1997) ("[O]nly prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate.")). The Fourth Circuit looked at the fact that the previous actions produced no result on the merits related to the later-filed action, in finding the arbitration provision was not waived. *Lauricia,* 268 F.3d at 250.

Unlike all these cases, Defendant's third-party complaint in California state court invoked the Agreement containing the forum-selection clause. Doc. 16–1 at 25. In Count Three, the breach of contract action in that case concerns Plaintiff's alleged failure to properly include Starbucks as an insured on its liability insurance. *Id.* Furthermore, Counts One and Two seek indemnity and contribution from Plaintiff for any liability found against Starbucks in the California personal injury matter relating to one of the allegedly defective chairs. *Id.* at 23–24. Section 19B of the Supplier Handbook states as follows:

> Seller shall indemnify, defend and hold harmless Starbucks and Customers against any … claims resulting from injury, illness, and/or death caused by use of the Goods, unless caused by the sole negligence or misconduct of Starbucks.

Doc. 16–1 at 36. Thus, an action for indemnity should also be governed by the forum selection clause, yet was brought in California. While Defendant may have had good reasons to choose the California forum, the fact remains that it was the one who chose to file a third-party complaint in California. Moreover, the personal injury plaintiff in the California case did not sue Kettler. The clause does not reserve the right for Starbucks to choose its forum; it stated "[a]ny legal proceeding shall be brought ... in the state of Washington." Doc. 16–1 at 36.

Additionally, not only did Starbucks sue Kettler in California state court, its letters to Kettler did not cite the Agreement, did not cite Washington law, did not cite the forum selection clause, and yet discussed sales, damages, sampling, and the threat of future litigation. Thus, the combination of the existing California state court case, and the failure to cite the Agreement in its letters to Kettler led the Court to conclude that Starbucks waived the forum-selection clause, and thus the controlling effect that *Atlantic Marine* would normally give the forum-selection clause did not apply in this matter.

### 2. § 1404 Factors

Having concluded that the Court was not bound by the forum-selection clause, the Court considered whether the other considerations of § 1404 applied. The first prong of the § 1404 test was satisfied because the forum selection clause would have allowed this action to be brought in Washington.

Under the second prong of the § 1404 test, "a district court typically considers: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Heinz Kettler GMBH & Co. v. Razor USA, LLC,* 750 F.Supp.2d 660, 667

(E.D.Va.2010) (citing *JTH Tax, Inc. v. Lee,* 482 F.Supp.2d 731, 736 (E.D.Va.2007)). Although "[t]he decision whether to transfer an action under the statute is committed to the sound discretion of the district court ... [t]he party seeking transfer bears the burden of proving that the circumstances of the case are *strongly* in favor of transfer." *Id.* (internal citations and quotation marks omitted).

In this case, Defendant did not meet its burden of showing that these factors warranted transfer. Plaintiff has chosen this forum, and because Starbucks waived the applicability of the forum selection clause, this factor does not favor transfer. While Washington would be a more convenient forum for Defendant because it is based there, it would be substantially more inconvenient for Plaintiff. Additionally, witness convenience and access would not be facilitated by transferring venue. While Virginia will not likely have all of the witnesses necessary for this case, there are no allegations that the chairs were sent to Washington; it appears they were all shipped to California and Arizona. Accordingly, travel will likely be necessary for some witnesses regardless of whether this case is heard in Virginia or Washington. Finally, the interest of justice does not favor transfer; it appears that Starbucks is not in good-faith asserting transfer because it filed its third-party complaint in California, and Washington has no connections with the factual dispute likely to be at issue in this case. Therefore, the Court **DENIED** the Motion to Transfer Venue.

### IV. CONCLUSION

Accordingly, the Court **DENIED** the Motions to Dismiss and/or Transfer Venue, Docs. 5, 7.

The Clerk is **REQUESTED** to deliver electronically a copy of this Order to all counsel of record.

It is so **ORDERED.**