**COASTAL MECHANICS CO., INC., Plaintiff,**

v.

**DEFENSE ACQUISITION PROGRAM ADMINISTRATION, Defendant.**

**No. 1:14cv1021 JCC/JFA.**

United States District Court, E.D. Virginia, Alexandria Division.

Signed Jan. 13, 2015.

John Chapman Petersen, Surovell Isaacs Petersen & Levy PLC, Fairfax, VA, for Plaintiff.

Robert Thomas Hicks, Holland & Knight LLP, McLean, VA, for Defendant.

## MEMORANDUM OPINION

JAMES C. CACHERIS, District Judge.

This matter is before the Court on Defendant Defense Acquisition Program Administration's ("DAPA") Motion to Dismiss for Improper Venue. [Dkt. 9.] For the

following reasons, the Court will grant the motion.

## I. Background

Coastal Mechanics, Co., Inc. ("Coastal Mechanics") is an aerospace and defense manufacturing services company specializing in the manufacture of legacy support systems for foreign militaries. (Compl. [Dkt. 1] ¶ 4.) According to Plaintiff, DAPA is a South Korean "company" focused on providing national defense services and supplying military and defense products. (*Id.* ¶ 10.) DAPA contends that it is an agency of the Republic of Korea ("ROK" or "South Korea") tasked with, among other things, procuring parts and supplies for the ROK military. (Def.'s Reply [Dkt. 13] at 3; Def.'s Reply [Dkt. 13], Ex. A, ¶ 4 [hereinafter "Choi Decl."].) Coastal Mechanics supplied spare parts for military helicopters to DAPA. (Compl. ¶ 12.)[1]

In 2009, problems arose in the relationship between Coastal Mechanics and DAPA. The complaint alleges that in a November 20, 2009 DAPA "decided to cancel all the pertinent contracts with Coastal Mechanics[.]" (*Id.* ¶ 27.) The complaint further alleges that "[u]ltimately, DAPA cancelled all its contracts with Coastal Mechanics without justification." (*Id.* ¶ 28.) Paragraph 20 of the Complaint identifies "at least seven contracts" that were entered into by the parties. (*Id.* ¶ 20.) Coastal Mechanics makes specific allegations about two of the contracts—KFX–DAPA–61AD07E16 ("E16 contract") and KFX–DAPA61AD07C72 ("C72 contract.") (*Id.* ¶¶ 21, 24.)[2] As to the E16 contract, Coastal Mechanics alleges DAPA falsely claimed nonperformance of certain con-

tract terms. (*Id.* ¶ 21.) Coastal Mechanics claims the C72 contract was also breached by DAPA because DAPA impermissibly "seized the performance bond for the contract." (*Id.* ¶ 24.) Both contracts have identical choice-of-law and forum-selection clauses that read as follows:

> **25. Governing Law:** The formation, validity and the performance of this Contract shall be governed by the laws of the Republic of Korea. Nothing in this Contract shall be interpreted against the "Act on Contract to which the State is a Party."

> **26. Jurisdiction:** In the event of disputes, controversies, or disagreements between Seller and Buyer arising in connection with this Contract ("the Dispute"), the parties shall negotiate in good faith for at least thirty (30) days from the date of the occurrence. However, if the parties fail to reach settlement or resolution after thirty days, any Dispute shall be finally settled by litigation in Seoul Central District Court, Republic of Korea.

(Def.'s Mem. in Supp. [Dkt. 9], Exs. 1 & 2, ¶¶ 25, 26.)

Coastal Mechanics filed a one-count complaint in this Court alleging breach of contract. [Dkt. 1.] DAPA timely filed the instant motion, alleging that venue is improper under Federal Rule of Civil Procedure 12(b)(3) because the contracts at issue contain a forum-selection clause that mandates this action must be litigated in South Korea. (Def.'s Mot. [Dkt. 8] at 1.) Having been fully briefed and argued, this motion is ripe for disposition.

---

1. At some point prior to 2006, DAPA took over contracts previously held by the Defense Procurement Agency ("DPA"). (Compl. ¶ 10.) Coastal Mechanics had been supplying parts to DPA for approximately thirty years. (*Id.* ¶ 5.) The complaint does not specify when DAPA assumed these contracts. Some of

these assumed contracts are the ones at issue here.

2. At the motion hearing, Coastal Mechanics' counsel confirmed that the Complaint is focused on these two contracts.

## II. Analysis

■ Federal Rule of Civil Procedure 12(b)(3) permits a defendant to raise improper venue in a pre-answer motion. DAPA filed the instant motion, styled as a "Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(3)," raising as its only ground for a venue challenge the forum-selection clause in the two contracts. (*See* Def.'s Mem. in Supp. [Dkt. 9].) Not once in the motion or the memorandum in support did DAPA assert that the statutory venue provisions were not satisfied. In opposition, Coastal Mechanics argues that a motion to dismiss for improper venue under Rule 12(b)(3) is not the proper procedural mechanism to enforce a forum-selection clause. (Pl.'s Opp. [Dkt. 12] at 3–5.) Coastal Mechanics is correct. "Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas,* — U.S. —, 134 S.Ct. 568, 577, 187 L.Ed.2d 487 (2013). In its reply brief, DAPA raises, for the first time, the argument that venue is improper under 28 U.S.C. § 1391. Leaving aside the Court's frustration that a self-styled venue motion makes no proper arguments about venue, the Court will consider whether (a) venue is proper in this case and (b) the appropriate remedy, considering the forum-selection clause.

### A. Venue

■ Before turning to the substantive issue of whether venue is proper, the Court must make a threshold determination as to the legal status of DAPA, as that status controls which subsection of the venue statute applies. Specifically, the Court must decide whether DAPA is a private company as Coastal Mechanics implies (*see* Compl. ¶ 2) or whether it is an arm of the South Korean government, as DAPA claims (*see* Def.'s Reply & Choi Decl.). Under Rule 12(b)(3) the Court is allowed to freely consider evidence outside the pleadings. *Silo Point II LLC v. Suffolk Const. Co., Inc.,* 578 F.Supp.2d 807, 809 (D.Md.2008). In addition, when resolving a motion to dismiss under Rule 12(b)(3), "the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis." *Id.* (citation and internal quotation marks omitted). Nevertheless, "[i]n deciding a motion to dismiss, all inferences must be drawn in favor of the plaintiff, and the facts must be viewed as the plaintiff most strongly can plead them." *Id.*

Coastal Mechanics alleges that DAPA "is a company incorporated in accordance with the laws of the Republic of Korea." (Compl.¶ 2.) It further alleges that DAPA has a domestic office in Arlington, Virginia, "where it conducts business in Virginia with companies both in Virginia and in other states, including Texas." (*Id.*) This office "communicated frequently with Coastal Mechanics during the relevant time period regarding the material facts of this case." (*Id.*) Attached to the complaint are two exhibits—correspondence from the director of DAPA, printed on letterhead reading "DAPA Republic of Korea" with a South Korean address (Ex. A) and a letter from a representative of Coastal Mechanics, addressed to DAPA's director in South Korea (Ex. B).

In contrast to Coastal Mechanics' assertions that DAPA is a private company with a domestic office in Virginia, DAPA contends that it is an arm of the South Korean government headquartered in South Korea. (Choi Decl. ¶¶ 4–5.) The ROK does own a building in Arlington, Virginia,

which is referred to as "Korean Embassy #2." (*Id.* ¶ 6.) Korean Embassy #2 contains members of many branches of the ROK armed forces, including some DAPA employees. (*Id.* ¶ 8.) Outside of the few DAPA personnel located at Korean Embassy #2, DAPA does not have any other personnel in Virginia. (*Id.* ¶ 9.) DAPA does not have any other offices or facilities in Virginia. (*Id.*)

The Court credits DAPA's description of its legal status. First, it is in the best position to know whether it is or is not an arm of the South Korean government. Second, Coastal Mechanics' own exhibits support the proposition that DAPA is an arm of the South Korean government. Therefore, the appropriate venue subsection governing this case is 28 U.S.C. § 1391(f).[3]

Where, as here, there is a civil action brought against a foreign state,[4] the action may be brought in

(1) any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

(2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;

(3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or

instrumentality of a foreign state as defined in section 1603(b) of this title; or

(4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f). When a party challenges venue, the Court must decide which, if any, of venue subsections apply to the case. If the case fits one of the subsections, venue is proper; if not, the action must be dismissed or transferred under 28 U.S.C. § 1406(a). *Atl. Marine*, 134 S.Ct. at 577.

None of these subsections apply here. Despite Coastal Mechanics' assertions to the contrary, it does not appear that there was any communication between Korean Embassy #2 and Coastal Mechanics regarding this contract. In fact, Coastal Mechanics has put forward exhibits undermining its own position. As the claim here is not brought under 28 U.S.C. § 1605(b), subsection (2) is inapplicable. Finally, DAPA is not licensed to do business in the Commonwealth of Virginia. *See* Commonwealth of Virginia, State Corporation Commission, https://sccefile.scc.virginia.gov/Find/Business. Therefore, venue in the Eastern District of Virginia is improper.

**B. Remedy**

This Court must decide the appropriate remedy. Under 28 U.S.C. § 1406, where venue is wrong or improper, a district court shall dismiss the case, or "if it be in the interest of justice, transfer such case

---

**3.** At the motion hearing, counsel for Coastal Mechanics conceded that § 1391(f) was the correct venue subsection to apply.

**4.** "Foreign state" is defined as a "political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a). "An agency or instrumentality of any foreign state means any entity—(1) which is a separate

legal person, corporate or otherwise, and (2) which is an organ of a foreign state or a political subdivision thereof . . . and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country." Under this definition, DAPA is an instrumentality of a foreign state, and therefore § 1391(f) applies.

to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).[5] Ostensibly, this case could have been brought in the United States District Court for the Southern District of Texas, as this case concerns a contract dispute, and contract negotiations presumably took place in part at Coastal Mechanics' headquarters in Houston, Texas. However, the Court must consider the effect of the forum-selection clause. The Court must determine whether the forum-selection clause is mandatory and, if so, whether it is enforceable. If the answer to both of these inquiries is in the affirmative, then this case must be dismissed rather than transferred.

■ It is unclear whether the body of law specified in the contract—here, South Korean law—or federal law governs whether the clause is mandatory. The Second Circuit has held that where there is a choice-of-law provision in a contract, that body of law governs whether the forum-selection clause is mandatory. *Martinez v. Bloomberg LP,* 740 F.3d 211, 218 (2d Cir.2014) ("Hence, if we are called upon to determine whether a particular forum-selection clause is mandatory or permissive ... or whether its scope encompasses the claims or parties involved in a certain suit, we apply the law contractually selected by the parties."). However, it appears that the Fourth Circuit applies federal law to determine whether the clause is mandatory. *See Eisaman v. Cinema Grill Sys., Inc.,* 87 F.Supp.2d 446, 449 (D.Md.1999) ("Prior to conducting the [*M/S*] *Bremen* [*v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) ] analysis, the court must determine whether the forum-selection clause at issue

is mandatory or permissive. If the clause is merely permissive, the action will not be dismissed; if mandatory, it will be enforced as required by *Bremen.*") (citing cases from other circuits). As the parties have not briefed the applicability of South Korean law and maintained at the motion hearing that federal law governs the question of whether the clause is mandatory, this Court will apply federal law to resolve this issue.

■ A mandatory forum-selection clause is "one containing clear language showing that jurisdiction is appropriate only in the designated forum." *Davis Media Grp., Inc. v. Best Western Int'l, Inc.,* 302 F.Supp.2d 464, 467 (D.Md.2004). It is clear that the language of the contracts necessitate that all actions be brought in South Korea. Paragraph 26 of the E16 and C72 contracts state that "[i]f the parties fail to reach settlement or resolution [after the thirty day negotiation period], any Dispute *shall* be finally settled by litigation in Seoul Central District Court, Republic of Korea." (Exs. 1 & 2, ¶ 26.) Black's Law Dictionary defines "shall" as "has a duty to; more broadly, is required to." *Black's Law Dictionary* 1407 (8th ed.1999). There is no mistaking the plain import of those terms: that any and all disputes must be resolved in Seoul Central District Court. Both parties signed the contracts and therefore are bound by these terms. (*See* Def. Mem. in Supp., Exs. 1 & 2, p. 2.) Therefore, the requirement to litigate in South Korea is mandatory.

Coastal Mechanics reads the forum-selection clause as requiring at least thirty-days of good-faith negotiation before the forum-selection clause may be invoked. (Pl.'s Opp. at 5.) According to Coastal Me-

---

**5.** Section 1406(a) in its entirety reads: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

chanics, DAPA has waived the forum-selection clause because it failed to undertake such negotiations, citing *Kettler Int'l v. Starbucks, Corp.,* 55 F.Supp.3d 839, 849–50, 2014 WL 5461842, at \*8 (E.D.Va. Oct. 21, 2014). (*Id.* at 5–6.) Both the argument and the case in support are inapposite.

■ Kettler states that a party may waive enforcement of a forum-selection clause, "but such waiver cannot be found lightly." *Kettler,* 55 F.Supp.3d at 849, 2014 WL 5461842, at \*8 (citations and internal quotation marks omitted). A forum-selection clause will not be deemed waived unless "(1) the party invoking the clause has taken action inconsistent with it or has delayed its enforcement, and (2) the other party would be prejudiced by its enforcement." *Id.* (citations and internal quotations omitted). Generally, these conditions are satisfied when a party disregards a forum-selection clause and sues in an unauthorized forum. *Id.* (citation and internal quotation marks omitted).

Here, the parties are in disagreement about whether there has been thirty days of good-faith negotiation prior to this litigation. Even assuming, without deciding, that there were no negotiations, such a lack of negotiations is not enough to show that DAPA has waived the forum-selection clause. A fair reading of the clause is that any dispute that still remains after thirty days of negotiation is to be resolved in Seoul Central District Court. If there has not been the thirty-day negotiation period, then the case might not be ripe for adjudication. But that is a determination for the Seoul Central District Court. In other words, the thirty-day negotiating period is not a condition precedent to invoking the forum-selection clause. Regardless of whether there has been thirty days of negotiation, any litigation must be brought in South Korea.

■ As the clause is mandatory, the Court must decide if it is enforceable. Federal law governs enforceability, *see Martinez,* 740 F.3d at 217, and as a court sitting in diversity, this Court applies the law of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Virginia law states that contractual provisions limiting the place or court where potential actions between the parties may be brought are *prima facie* valid and should be enforced, unless the party challenging enforcement establishes that such provisions are unfair or unreasonable or are affected by fraud or unequal bargaining power. *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.,* 240 Va. 337, 397 S.E.2d 804, 807 (1990). There is no evidence that the clause was procured by fraud or unequal bargaining power. *See Zaklit v. Global Linguist Solutions, LLC,* 53 F.Supp.3d 835, 845–46, No. 1:14cv314, 2014 WL 4656204, at \*4 (E.D.Va. Sept. 16, 2014) (collecting cases and stating that fraud and unequal bargaining power must go to the procurement of the clause, not the contract as a whole).

■ Neither is it unreasonable to enforce the forum-selection clause. First, both parties are sophisticated business entities that entered into a series of contracts over many years. Second, the choice-of-law provision mandates that South Korean law is to be applied to resolve any disputes. A South Korean forum is better equipped than a U.S. federal district court to undertake this analysis. Finally, Coastal Mechanics claims that it would be a "great inconvenience" in litigating in South Korea because many of its witnesses would be forced to travel. (Pl.'s Opp. at 9.) However, "mere inconvenience and expense are insufficient to render enforcement of a forum-selection clause unreasonable." *Rice Contracting Corp. v. Callas Contractors,*

*Inc.,* No. 1:08cv1163, 2009 WL 21597, at *4 (E.D.Va. Jan. 2, 2009). Therefore, the Court finds that the forum-selection clause is enforceable.

Coastal Mechanics argues that a South Korean forum is "hardly impartial," as DAPA is an executive agency of the South Korean government, and thus it would be unfair to require it to litigate in South Korea. (Pl.'s Opp. at 10.) This Court declines to cast dispersions on a branch of a sovereign nation's government and finds that it would not be fundamentally unfair to require Coastal Mechanics to perform its contractually obligated duty. Therefore, since the forum-selection clause is mandatory and enforceable, this Court will dismiss the case.

### III. Conclusion

For the reasons set forth above, the Court will grant DAPA's motion to dismiss. An appropriate order will follow.

### *ORDER*

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED:

(1) Defense Acquisition Program Administration's Motion to Dismiss for Improper Venue [Dkt. 9] is GRANTED;

(2) This action is DISMISSED WITHOUT PREJUDICE; and

(3) The Clerk of Court shall forward a copy to all counsel of record. THIS ORDER IS FINAL.